**NEW AMSTERDAM CASUALTY CO. v. JONES et al.**

**No. 3032.**

District Court, E. D. Michigan, S. D.

June 24, 1942.

888

Mason, Davidson & Mansfield, of Detroit, Mich., for plaintiff.

Bratton & Bratton and Buell Doelle, all of Detroit, Mich., for defendants.

PICARD, District Judge.

This is an action for a declaratory judgment brought by plaintiff to determine the rights of defendants, Oscar Martin and Buell Doelle, in a certain insurance policy, issued by plaintiff to defendant, Larry Jones.

Jones, a gas station proprietor, shot and severely injured Oscar Martin, a customer, over a dispute on the type of oil he had just put into Martin's motor. He served some time in prison for his crime and Martin then sued Jones recovering judgment in the sum of $5,000 for what he claimed was Jones' "wilful, intentional and unprovoked act". Martin seeks garnishment of plaintiff.

Doelle defended Jones in the civil suit and now seeks to recover his attorney fees because the insurance policy which Jones carried with plaintiff provided for defense by plaintiff of any suits, warranted or unwarranted, brought against Jones on account of any "accident".

Plaintiff denies all liability on the theory that the shooting of Martin by Jones was "intentional" and therefore not an "accident".

The facts are unusual and the law applicable calls for several niceties of distinction, the exact wording of the policy covering the question now before this court being important. That policy insures Jones against "bodily injuries or death suffered, or alleged to have been suffered, as the result of any accident occurring while this Policy is in force, by any person or persons not employed by the Assured, by reason of the classified operations of the Assured's trade or business."

Oscar Martin was "not employed by the Assured". The shooting occurred as the result of the sale of oil by Jones to Martin. That sale of oil was part of Jones' business. If Martin suffered "an accident" he is covered by this policy. This is admitted and we must determine just what is the opinion of our courts on this question. Here we find two schools. In the State of Ohio the test is enunciated in Cordon et al. v. Indemnity Ins. Co. of North America, 123 F.2d 363, a decision of our own Sixth Circuit Court of Appeals—"In an appeal from a declaratory judgment declaring that a policy insuring the owner of premises against liability imposed by law on account of bodily injuries accidentally suffered thereon does not insure against an assault willfully committed by the owner's employee, it is the view of the court that the issue is controlled by the decisions of the Ohio Supreme Court in Commonwealth Casualty Co. v. Readers, 118 Ohio St. 429, 161 N.E. 278, and Rothman et al. v. Metropolitan Casualty Insurance Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169, wherein the principle is announced that: *'The state of the will of the person by whose agency an injury is caused, rather than that of the injured person, determines whether an injury is accidental.'*" (Italics ours.)

This is likewise seemingly the law of Massachusetts as expressed in Sontag v. Galer, 279 Mass. 309, 181 N.E. 182, and of Illinois in Briggs Hotel Co. v. Zurich Gen. Acc. & Liability Ins. Co., 213 Ill.App. 334.

Whether an incident is "an accident" according to these courts seems to depend upon whether the person by whose agency the injury was caused intended the injury. However, the Michigan law does not follow this line of reasoning and we are, of course, bound by the Michigan decisions—Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In the State of Michigan it is uniformly held that where an insured suffers injury at

the hands of another, whether intentional or not, he may recover from his "own" insurance company on an accident insurance policy—the theory being that so far as he is concerned the injury he suffered was an accident. Furbush v. Maryland Casualty Co., 131 Mich. 234, 91 N.W. 135, 100 Am.St.Rep. 605; Id., 133 Mich. 479, 95 N.W. 551; Curth v. New York Life Ins. Co., 274 Mich. 513, 265 N.W. 749.

See, also, Ripley v. Railway Passengers Assurance Co., 83 U.S. 336, 21 L.Ed. 469; Robinson v. United States Mutual Accident Association, C.C., 68 F. 825; Interstate Business Men's Accident Association v. Lester, 8 Cir., 257 F. 225; Employers' Indemnity Corporation v. Grant, 6 Cir., 271 F. 136; New York Life Insurance Co. v. Murdaugh, 4 Cir., 94 F.2d 104; Central National Bank of Cleveland v. General American Life Insurance Co., 6 Cir., 105 F.2d 878.

It must be admitted that there is an obvious distinction between these species of cases and those of the kind being herein analyzed and if this genus was the only authority for defendant's position it would be far from controlling. But the Michigan viewpoint is established beyond doubt by the recent decision of Peterson v. Aetna Life Insurance Co., 292 Mich. 531, 290 N.W. 896, where Peterson's Estate was denied the fruits of an insurance policy covering "accidents" to himself on the fact showing that Peterson was killed by the son of the woman that Peterson himself was aiming a gun at and threatening to murder. The court on page 535 of the Peterson case in 292 Mich., on page 898 of 290 N.W., quotes with approval the following from Interstate Business Men's Accident Association v. Lester, supra: "The line of distinction is this: If the party does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly free from culpability himself, the result is accidental as to him, though it may have been within the deliberate intent of the aggressor."

And then the court added—"This distinction is recognized and observed in most of the adjudicated cases. An insured who meets death in an affray in which he was the aggressor cannot ordinarily be said to have suffered his injuries as the result of an accident, for he must be held to have foreseen the result of his wrongful acts."

In the State of Michigan also it is a well-recognized rule that if one is injured as the result of the driver of an automobile knowingly and purposely exceeding the speed limit or intentionally violating any law, the insurance company is liable. Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N.W. 626.

In truth the State of Michigan goes even further. Under what is known as the Guest Passenger Act, the guest passenger cannot recover from the owner of the car for ordinary negligence but can recover only where the driver has been guilty of "gross negligence" or "wilful and wanton misconduct". Michigan Statutes Annotated, Article 9, Section 1446, Comp.Laws 1929, § 4648.

In the case at bar, Jones intended to do just what he did do. Jones has been convicted and served his sentence for "intentional assault" and Martin won his judgment on the theory of his own declaration that he did not provoke Jones but that Jones was guilty of an "intentional wrong". Of course Jones cannot profit from his own wrongful act. Miller v. United States F. & G. Co., 291 Mass. 445, 197 N.E. 75, but in Michigan insurance is for the protection of third parties as the following extract from Article 24, Section 296, Michigan Statutes Annotated, Comp.Laws 1929, § 12460, will verify—"No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, * * * shall be issued or delivered in this state by any corporation or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action in the nature of a writ of garnishment may be maintained by the injured person, or his or her personal representative, against such corporation or other insurer under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy. * * * Provided, however, That such corporation or other insurer, shall have all the defenses in any action brought under the provisions of this section that it

originally had against its assured under the terms of the policy providing the policy is not in conflict with the provisions of this section."

See, also, "Condition E" of the policy.

(Note: The case of Voss v. Stranahan et al., 248 Mich. 390, 227 N.W. 542, was decided on the law in existence before the above act was passed (1929).

At first blush it may appear to be inconsistent and inequitable to sustain a decision against an insurance company under the facts of this case. Nevertheless, we are impressed by the thought that this reaction is magnified by the presence of a gun as the instrument of the injury received. Yet an automobile in the hands of some people may be as dangerous, if not more dangerous, than a gun. Courts, of course, must lay down general principles so that society may be aided in the conduct of its affairs, which principles must follow to a logical conclusion when applied to almost any abstract fact situation. This sustains the theory that law is reason. And so following along those lines we are convinced that if Jones had gotten into his automobile and intentionally run over Martin, we doubt whether any insurance company would have questioned its liability. Here he accomplished the same result with a gun.

All counsel concerned also admit that the principal is responsible for the acts of his agent. As for example, where an employee of a theater inflicts injury upon a patron, the doctrine of respondeat superior applies. Fox Wisconsin Corp. v. Century Indemnity Co., 219 Wis. 549, 263 N.W. 567; Archer Ballroom Co. v. Great Lakes Casualty Co., 236 Wis. 525, 295 N.W. 702.

Yet this very admission is another argument advanced by Oscar Martin for holding plaintiff liable and here again this court is inclined to agree with defendant's counsel. One cannot very well reason that the master is responsible for torts of his servant to the extent of having an insurance policy carried by the master used for redress of that wrong when the master himself is not covered. Certainly if this is true on the theory of respondeat superior, how can it logically be denied that there is the same responsibility by the insurance company where there is not the intervention of a servant? See Stern & Co. v. Liberty Mutual Ins. Co., 269 Pa. 559, 112 A. 865.

The fact remains that Martin was a customer; that the company insured customers against accidents; that seemingly nothing was done by Martin to provoke or encourage Jones. He therefore suffered an accident. If the insurance company didn't want to insure Jones against this kind of an accident to others—and we specifically direct attention to the exact wording of this policy that it insured Jones against "accident * * * by any person or persons not employed by the Assured"—it should have written into its policy a clause that it would not be responsible for the result of any wilful or intentional wrongful act of the insured. Such policies have been written and the courts have upheld them. National Life and Accident Ins. Co. v. Hannan, 214 Ala. 663, 108 So. 575; Wildblood v. Continental Casualty Co., 182 La. 202, 161 So. 584; Zurich, etc., Ins. Co. v. Flickinger, 4 Cir., 33 F.2d 853, 68 A.L.R. 161.

Not having that provision in its policy I believe that plaintiff here can be held as a garnishee defendant and so hold.

As for the right of Doelle—I understand that the amount has been agreed upon in the event that Doelle is entitled to judgment here. In defending Jones in the civil suit after the insurance company had failed and refused to aid in Jones' defense, Jones secured Doelle as his attorney as he had a right to do. Doelle should recover for his services rendered.